UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED

SEP 13 2006



```
************************************************************************
                                    *
ERIC CASTANEIRA,                    *      CIV 03-4167
                                    *
            Plaintiff,              *   MEMORANDUM OPINION AND
                                    *   ORDER GRANTING MOTION FOR
    -vs-                            *   SUMMARY JUDGMENT ON CLAIM
                                    *       FOR INJUNCTIVE RELIEF
ED LIGTENBERG, Executive Director,  *
South Dakota State Board of Pardons and *
Paroles,                            *
                                    *
            Defendant,              *
                                    *
************************************************************************
```

Pending before the Court is Defendant Ed Ligtenberg's motion for summary judgment on Plaintiff's retaliation claim seeking prospective declaratory and injunctive relief against Ligtenberg (Doc. 51.) For the following reasons, the motion will be granted.

## BACKGROUND

Plaintiff, Eric Castaneira, proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated when Ed Ligtenberg ("Ligtenberg") and members of the South Dakota Board of Pardons and Paroles imposed certain conditions on his parole and suspended-sentence release. Plaintiff also alleges that actions taken by Ligtenberg during the course of the proceedings were retaliatory, and he has asked the Court to enjoin Ligtenberg "from ever committing the same or similar acts against Castaneira in the future."

The facts relevant to this decision will be set forth here. On February 2, 2001, Plaintiff filed a lawsuit in this Court against several individual Parole Board members seeking a declaration that, based upon the fact that the Governor had commuted Plaintiff's sentence, the Parole Board lacked

the authority to impose any conditions on his release. Plaintiff also requested an injunction prohibiting the Parole Board from imposing conditions on his release. Plaintiff alleged in his complaint in the 2001 federal action that the Parole Board had "indicated that the conditions set forth in the South Dakota Department of Corrections/South Dakota Board of Pardons and Paroles Standard Parole Agreement would contain the conditions regarding the supervision of the Plaintiff during the suspended sentence portion of his sentence, as well as the potential of additional conditions being set." In his prayer for relief, Plaintiff asked the Court to "prohibit [the Parole Board] from imposing any conditions on [his] suspended sentence other than those specifically set forth by the Commutation Order of Governor Janklow or by statute..." and to "...order the Board of Pardons and Paroles to include only those conditions on the suspended portion of [his] sentence" that had been set forth in the commutation order. On May 15, 2002, the Court entered its Memorandum Opinion and Order in *Castaneira v. Jorgenson, et al.*, 01-CV-4026-JES (*see* Doc. No. 74) dismissing Plaintiff's claims without prejudice because they were not ripe for adjudication.

In late February, 2001, shortly after Plaintiff filed his 2001 federal lawsuit challenging the Parole Board's authority to impose conditions on his release, Ligtenberg was appointed Executive Director (Director) of the Parole Board. Ligtenberg's duties and responsibilities as Director are set forth under SDCL §§ 24-13-10 and 24-15A-13 and include, but are not limited to, assisting in the preparation of inmate supervision agreements, maintaining minutes and records of meetings, maintaining parole files, overseeing administrative functions, and performing other duties and activities as directed and authorized by the Secretary of the DOC and the Parole Board. The authority to grant, deny, rescind, or revoke parole lies exclusively with the Parole Board.

On June 28, 2002, the Parole Board voted to grant Plaintiff's application for parole. The Parole Board's order granting parole was conditioned upon Plaintiff signing a standard supervision agreement. Plaintiff's initial target release date was set for August 12, 2002. Plaintiff was incarcerated at the Mike Durfee State Prison (MDSP) at the time his application for parole was granted. His case manager at the prison was James Halsey. John Schultz was assigned to be his parole agent. Ligtenberg was directed by the Parole Board to supervise the preparation of Plaintiff's

2

supervision agreement and provide any needed assistance. Schultz prepared and forwarded Plaintiff's supervision agreement to Halsey so that it could be signed by Plaintiff and the parole process could continue. That agreement included language that Plaintiff was to have no contact, even through third parties, with all past or current employees (or their families) of Midland National Life Insurance Company ("Midland"). At the time, Plaintiff was involved in civil litigation with Midland and a Midland employee, he was receiving renewal commission payments from Midland, and he had a life insurance policy with the company. According to Plaintiff, the conditions denied him access to the courts and infringed on other constitutional rights.

On or about July 30, 2002, Ligtenberg was notified by Parole Board staff that Plaintiff had refused to sign the supervision agreement as offered. Ligtenberg was told that Plaintiff had instead signed an addendum to the supervision agreement, which he had prepared. Plaintiff's addendum stated that it was his understanding the supervision agreement and no-contact provisions did not prohibit him from contacting Midland Insurance in connection with any legal proceedings. Ligtenberg told staff that Plaintiff, like all other inmates, would need to sign the supervision agreement as offered. Halsey was instructed by Parole Board staff to tell Plaintiff that the supervision agreement must be signed as offered for the parole process to continue.

On or about July 31, 2002, Ligtenberg was notified by Parole Board staff member Shelly Palsma ("Palsma") that she had received a letter from Plaintiff regarding the supervision agreement. (Palsma provides administrative support for the Parole Board at the Mike Durfee State Prison.) Palsma sent a copy of Plaintiff's letter to Ligtenberg. In this letter, Plaintiff asked why his parole release date had been cancelled and who had authorized such action.

On or about August 1, 2002, Ligtenberg received a telephone call from attorney Jeremiah Murphy (Murphy) regarding Plaintiff's supervision agreement. Murphy told Ligtenberg that he was Plaintiff's attorney, and he stated that Plaintiff was concerned the no-contact provisions in the supervision agreement would impair his ability to pursue his lawsuit against Midland Insurance and engage in settlement negotiations. Murphy and Ligtenberg had more than one telephone

3

conversation regarding Plaintiff's supervision agreement. Prior to speaking with Murphy, Ligtenberg was unaware that Plaintiff was involved in a lawsuit with Midland Insurance. Ligtenberg told Murphy that the no-contact provisions in the supervision agreement had been ordered by the sentencing court. Ligtenberg also told Murphy that nobody was trying to impede Plaintiff's access to the courts, and that he did not foresee that the conditions imposed by the sentencing court would be enforced in such a manner. Ligtenberg told Murphy that Plaintiff, like all other inmates, must sign the supervision agreement as offered for the parole process to continue. Murphy nonetheless asked that modifications be made to Plaintiff's supervision agreement. Ligtenberg said the agreement must be signed as offered. Murphy ultimately told Ligtenberg that Plaintiff would sign the supervision agreement as offered. Ligtenberg then wrote to Plaintiff that the terms and conditions of his supervision agreement were considered non-negotiable, and that the DOC would not be bound by Plaintiff's understanding regarding the conditions of his release. Ligtenberg told Plaintiff that he must sign the supervision agreement without condition or qualification if he wished for the parole process to continue. Ligtenberg waited several days after writing to Plaintiff, but he did not hear back from either Plaintiff or Murphy regarding the supervision agreement, nor did Plaintiff sign and return the supervision agreement that had originally been presented. Ligtenberg decided to refer the matter to the Parole Board for its consideration. The next Parole Board meeting was scheduled for August 23, 2002.

On or about August 5, 2002, Ligtenberg wrote to the Parole Board and recommended that the Parole Board rescind Plaintiff's parole based upon his attempt to negotiate the terms of his supervision agreement. Prior to the Parole Board's August 23, 2002, meeting, Ligtenberg forwarded copies of Plaintiff's supervision agreement to all of the Parole Board members. Ligtenberg also forwarded Plaintiff's proposed addendum and copies of all correspondence, files, and documents. Ligtenberg told the Parole Board about Plaintiff's and Murphy's objections to the supervision agreement, and these objections were also reflected in the materials that were forwarded.

Ligtenberg received a letter from Plaintiff dated August 9, 2002, stating that he would sign the supervision agreement as it had originally been offered and that he would sue Ligtenberg and the

4

Parole Board if he was not released on the August 12, 2002, initial release date. Plaintiff also wrote that the Parole Board lacked the authority to incorporate into the supervision agreement the terms and conditions of release that had been imposed by the sentencing court. Ligtenberg forwarded a copy of Plaintiff's letter to the Parole Board for its review prior to the August 23, 2002, meeting.

On August 22, 2002, Ligtenberg received a letter from Murphy directed to the Parole Board asking its members not to rescind Plaintiff's parole. Ligtenberg forwarded Murphy's letter to the Parole Board for its review prior to the August 23, 2002, meeting. At the August 23 meeting, the Parole Board decided that Plaintiff had attempted to negotiate the terms of his community supervision agreement as it was presented and it rescinded Plaintiff's parole. Plaintiff believes that Ligtenberg failed to provide the Board with accurate and complete information.

Subsequently, Plaintiff filed an Application for Writ of Habeas Corpus in Minnehaha County Circuit Court challenging the recision of his parole. A hearing was held in state court on Plaintiff's Application. Plaintiff asserts that Judge Meierhenry orally sustained the Writ, finding that the supervision agreement infringed on Plaintiff's constitutional rights. No written decision was issued by Judge Meierhenry. Following this hearing, the Parole Board met to reconsider Plaintiff's parole application. On November 21, 2002, the Parole Board voted to restore Plaintiff's parole, and ordered that a new supervision agreement be prepared to state that Plaintiff may contact Midland and its employees in connection with his lawsuits or contract disputes so long as he notifies his parole officer in advance. Ligtenberg supervised the preparation of Plaintiff's supervision agreement as directed by the Parole Board. Plaintiff signed the supervision agreement and he was released on parole on December 5, 2002. Plaintiff completed his parole on March 3, 2003, and immediately began serving the suspended portion of his sentence.

Sometime in late March or early April of 2003, Schultz told Ligtenberg that he had been contacted by Plaintiff's brother, Ian Castaneira (Ian). Schultz told Ligtenberg that he intended to add Ian to Plaintiff's no-contact list. Ligtenberg told Schultz to prepare an addendum to Plaintiff's supervision agreement stating that he could not contact Ian. Ligtenberg told Schultz to make sure

5

that this addendum specified that Plaintiff and his attorney could still have contact with Ian within the context of any legal matters. Plaintiff was presented, and signed, this addendum on or about March 11, 2003.

On or about April 25, 2003, Ligtenberg appeared before the Parole Board to confirm that he was authorized to make necessary modifications to the terms of Plaintiff's suspended sentence supervision agreement, and he also asked whether advance approval would be needed to make future changes. The Parole Board told Ligtenberg that he and parole agents were authorized to make changes to Plaintiff's supervision agreement without advance approval by the Board.

Ian contacted Schultz again on or about April 28, 2003, asking that Plaintiff also be prohibited from contacting Ian's wife, daughter, and immediate family members. Ian did not inform Schultz of any litigation pending between him and his brother, nor did he tell Schultz about any dispute he may have had with Plaintiff over the handling of his mother's estate. Schultz contacted Ligtenberg in late April or early May, 2003, and said that Ian wanted Plaintiff to also be prohibited from contacting Ian's wife, daughter, and immediate family members. Schultz told Ligtenberg that Ian had said his family was afraid of Plaintiff and wanted no contact with him. Schultz said that he would prepare an addendum adding Ian's wife, daughter, and immediate family members to the no-contact list. Based upon what Schultz had told him, Ligtenberg agreed. The addendum prepared by Schultz stated that Plaintiff and his attorney could still contact the specified individuals within the context of any legal proceedings or negotiations, but Plaintiff believed that it unfairly limited his ability to do so.

On or about May 5, 2003, Schultz, the parole agent, told Ligtenberg that Plaintiff had refused to sign the addendum that added Ian's wife, daughter, and immediate family members to the no-contact list. On or about May 8, 2003, Ligtenberg received a letter from Plaintiff objecting that the most recent addendum impeded his access to the courts. Plaintiff also wrote that he did not believe the Parole Board could impose any conditions on his suspended sentence. Plaintiff demanded proof that Ligtenberg possessed the authority to execute the addendum. Ligtenberg told several Parole

6

Board members that Plaintiff was refusing to sign the addendum and conveyed Plaintiff's argument that the Parole Board lacked the authority to impose any conditions on his release.

On May 22, 2003, several Parole Board members expressed a desire to speak with Plaintiff. Plaintiff was called to appear before a limited panel of the Parole Board to explain exactly why he was refusing to sign the most recent addendum. Although these proceedings were informal, Murphy was contacted and allowed to participate in the meeting telephonically. At the May 22, 2003, meeting, which Ligtenberg attended, both Plaintiff and Murphy argued to the Parole Board that conditions could not be placed on Plaintiff's suspended-sentence release because none had been specified in the commutation order. The Parole Board members at the meeting told Murphy and Plaintiff that it was the Parole Board's position it could impose conditions of supervision on Plaintiff, and that if Plaintiff refused to sign the second addendum, that he could be found in violation of the conditions of his release. The Parole Board told Murphy and Plaintiff that the matter would be considered by the entire Parole Board the following day.

On May 23, 2003, the Parole Board met and considered Plaintiff's objections to the addendum. The Parole Board voted that Plaintiff would be required to sign the supervision agreement addendum as offered. At the conclusion of the Parole Board's meeting, a process server appeared and served Ligtenberg and the Parole Board with the Application for Writ of Prohibition that Plaintiff had filed earlier that same day in state court. In this state court Application for Writ of Prohibition, Plaintiff argued that the Parole Board lacked the authority to impose any conditions on his suspended-sentence release. Plaintiff also claimed that Ligtenberg had acted improperly when he referred Plaintiff's objections and demands to the Parole Board. On May 27, 2003, a hearing was held before Minnehaha County Circuit Court Judge Kathleen Caldwell (Judge Caldwell) on Plaintiff's Application for Writ of Prohibition. Attorney David Carter represented Ligtenberg and the Parole Board at this hearing. Carter reported to Ligtenberg following the hearing that Judge Caldwell had ruled that the addendum, which prohibited Plaintiff from contacting certain individuals, could not be construed to prevent Plaintiff from contacting the specified individuals in the course of any ongoing or future litigation.

7

The Parole Board met on June 4, 2003, and voted that Schultz and Carter should change the addendum to provide that Plaintiff could contact the individuals in question provided that he obtained advance permission from the parole officer. The Parole Board directed that the addendum language should mirror the language contained in the supervision agreement addressing Plaintiff's contacts with Midland and its employees.

On or about June 24, 2003, Plaintiff filed this pending action against Ligtenberg and several individual members of the Parole Board alleging violations of his federal constitutional rights. During this time, Schultz and Carter continued their efforts to craft an addendum that would be agreeable to Plaintiff. Schultz and Carter forwarded a revised addendum to Murphy and Plaintiff. Murphy wrote to Carter on or about June 23, 2003, and suggested that the language addressing contacts with Ian and his family be broadened. Murphy also said that Plaintiff continued to object to the imposition of any and all conditions on his suspended sentence.

On June 27, 2003, the Parole Board met to discuss Plaintiff's continued objections to the revised addendum. The Board voted to have Carter and Ligtenberg contact Murphy and Plaintiff and negotiate over the addendum language. Carter and Ligtenberg revised the addendum consistent with the suggestions set forth in Murphy's June 23, 2003, letter and forwarded the addendum to Murphy and Plaintiff. Plaintiff returned an addendum signed "under protest." This addendum, however, was different from the one that Carter and Ligtenberg had forwarded, and was not acceptable to them. On or about July 21, 2003, Ligtenberg filed an affidavit in Plaintiff's state-court action indicating that negotiations over the addendum language had reached a standstill. Carter asked Judge Caldwell, in the state court lawsuit, for guidance regarding how the parties should proceed. Plaintiff prepared an addendum and, on July 30, 2003, Plaintiff signed the addendum to the supervision agreement. This ended the dispute over the addendum and no-contact provisions. Plaintiff, however, continued with his state court lawsuit and pursued his argument that the Parole Board lacked the legal authority to impose any conditions on his suspended sentence.

On or about July 31, 2003, Ligtenberg was served with a subpoena requiring his appearance before Judge Caldwell in a hearing to be held on August 5, 2003, at 3:30 p.m. Ligtenberg was directed to bring to this hearing any Parole Board files that would reflect inmates being granted a commutation on the condition that they not return to South Dakota following their release. Carter moved to quash the subpoena as improper. A hearing was held on August 5, 2003, on Plaintiff's subpoena and the motion to quash. Ligtenberg appeared at the hearing and brought with him the specified documents. After hearing the arguments from the parties, Judge Caldwell issued a letter opinion denying Plaintiff's Application for Writ of Prohibition, finding that the conditions imposed by the Parole Board and Ligtenberg were constitutional and did not violate Plaintiff's right to due process, and that the Parole Board possessed the authority to impose conditions on Plaintiff's parole and suspended sentence above and beyond those set forth in the Governor's commutation order.

In an Amended Application for Writ of Prohibition filed by Plaintiff on or about May 27, 2003, Plaintiff had alleged that Ligtenberg failed to respond to his May 8, 2003, letter and acted improperly by referring Plaintiff's objections and complaints to the Parole Board, that he engaged in "retaliatory" action, and that he imposed conditions on his release independently from the Parole Board. Judge Caldwell rejected Plaintiff's arguments, finding that Ligtenberg did not act improperly or independently from the Parole Board and concluding that no due process violation, or any violation of state or federal law, had been shown. Plaintiff's appeal of Judge Caldwell's findings and conclusions was dismissed by the South Dakota Supreme Court on April 5, 2004.

In his *pro se* Complaint and Amended Complaint in this pending lawsuit, Plaintiff alleges that Ligtenberg retaliated against him because Plaintiff got a lawyer involved in the parole process and he insisted that his constitutional rights be upheld. As indicated earlier, attorney Jeremiah Murphy told Ligtenberg during their August 1, 2002, telephone call that Plaintiff would sign the agreement as it was written. In addition, on August 9, 2002, Plaintiff informed Ligtenberg by letter that he would accept the parole agreement and then "refer the matter to the court." According to Plaintiff's Amended Complaint, Ligtenberg's retaliatory actions included continuing to maintain that Plaintiff was

9

attempting to negotiate the conditions of his parole and recommending to the Parole Board that his parole be rescinded even after Ligtenberg was told that Plaintiff would sign the parole agreement.

Applying the doctrine of absolute immunity, this Court dismissed all claims and parties, with the exception of the claims against Ligtenberg, by Memorandum Opinion and Order issued on March 23, 2004. Plaintiff filed a Motion for Reconsideration which was denied on February 14, 2005. A Scheduling Order was issued and Ligtenberg filed a motion for summary judgment on May 19, 2005. On June 6, 2005, two lawyers filed a Notice of Appearance on behalf of Plaintiff. After considering the parties' submissions on Ligtenberg's motion for summary judgment, on March 27, 2006 this Court held that Ligtenberg is entitled to absolute immunity on most of Plaintiff's claims, including the retaliation claim to the extent that retrospective monetary relief was sought. Summary judgment was denied on Plaintiff's request to enjoin Ligtenberg from future retaliation. Ligtenberg's pending motion for summary judgment on Plaintiff's request for prospective declaratory and injunctive relief followed.

The parties submitted Statements of Fact in relation to Ligtenberg's pending motion for summary judgment on Plaintiff's request for injunctive or declaratory relief. The following facts are undisputed. Plaintiff has been on indirect supervision since September 10, 2004. "Indirect supervision is a classification granted to a person under supervision that requires one monthly report submitted either in person or by mail, and requires no personal or collateral contact." ARSD 17:61:02:19. Plaintiff does not report in person to his parole agent, but instead submits a written report each month about his work, his wages, whether he has had any contact with law enforcement, his vehicle, and his address. Since September, 2004, Plaintiff has had contact with his parole agent, Schultz, when he has needed permission to travel out of state. Plaintiff is aware of one of Ligtenberg's involvement in one request for travel outside of South Dakota. Absent a parole violation, Plaintiff will be on indirect supervision for the duration of his parole. His early release date is presently January 22, 2019. If Plaintiff violates his parole, Schultz might handle the situation without Ligtenberg's involvement, but it is possible that Ligtenberg would be involved in supervising Schultz. Ligtenberg presently is not directly involved in monitoring Plaintiff's parole

10

status, but he has an indirect role in Plaintiff's supervision and may have a more active role at some point. Ligtenberg has not spoken to or seen Plaintiff in the last year, but he has spoken to John Schultz about Plaintiff's parole on two occasions.

In addition to the retaliation allegations in the Complaint and the Amended Complaint set forth above, Plaintiff asserts in his brief that his release date was delayed for four months in retaliation for his refusal to surrender his constitutional right to pursue the *pro se* lawsuits he had filed. Plaintiff complains that, more recently, Ligtenberg would not allow him to go out-of-town to meet with a prospective witness. Plaintiff's explains the situation in his Affidavit:

> In July, 2005, I contacted my Parole Agent John Shultz and requested permission to travel to Minnesota to visit with an individual whom I believed might have information helpful to my claims against the Defendant, Ed Ligtenberg.
> The individual I was meeting did not want to travel to South Dakota and wanted to protect her identity from those working at the Department of Corrections, including the Defendant, Ed Ligtenberg.
> To respect this individual's privacy concerns, I told Mr. Shultz that I could not inform him exactly where I was going in Minnesota or whom I was meeting. I did inform Mr. Shultz that I would only be gone for one day.
> I told Mr. Shultz that the purpose of my trip was to obtain information in my case against Mr. Ligtenberg. Shultz agreed that what I was asking for was no different in scope and authority than a standard travel or work permit.
> Mr. Shultz refused to grant me permission to go to Minnesota and indicated that he would consult with Mr. Ligtenberg about the matter.
> After consulting with Mr. Ligtenberg, Mr. Schultz again refused to grant me permission to travel to Minnesota unless I disclosed the identity of the person I wanted to meet with and the location of the meeting.
> As a result, I did not travel to Minnesota nor did I meet with the individual whom I believed had information helpful in my case against the Defendant.

(Doc. 60, ¶¶ 3-9.) According to his affidavit, Ligtenberg recalls only two contacts with Plaintiff's parole agent since January, 2005, including the situation referred to by Plaintiff:

> The first was on July 19, 2005, when he requested a travel permit to Minnesota, but would not provide details about his destination. The parole agent, John Schultz, discussed the issue with me, but I do not know the outcome of Castaneira's request,

11

> which Schultz resolved. The other occasion was on May 19, 2005, when I requested that a Supervision Accountability Plan be completed so that Castaneira's early discharge date could be established. My request was made pursuant to counsel's inquiry about Castaneira's eligibility for early final discharge.

(Doc. 54, ¶ 4.)

Regarding the potential for future retaliation, Plaintiff states in his brief:

> Mr. Ligtenberg has the ability to issue a warrant for [Plaintiff's] arrest and to recommend that he return to the State Penitentiary to serve the remainder of his sentence. Even if Ligtenberg's recommendation is not followed by the Board, or if Plaintiff eventually obtains legal relief, Ligtenberg acting alone can put [Plaintiff] in prison. Every time that [Plaintiff's] rights are infringed upon he must make the difficult decision whether protecting his rights is worth the risk of incarceration.

(Doc. 58, p. 6.) Plaintiff's parole agent, John Schultz, avers that Ligtenberg has the authority to issue an arrest warrant for a parole violator, "but violation responses are governed by established DOC policy and the parole board ultimately decides whether an inmate is incarcerated or returned to the streets for ongoing supervision." (Doc. 53, ¶ 5.) Schultz says that he as the authority to decide Plaintiff's travel requests without the involvement of the parole board or the executive director. (*Id.* at ¶ 3.) He has not recently spoken to Ligtenberg about Plaintiff or about supervision of Plaintiff's parole. (Doc. at ¶ 6.) Schultz is not aware of any recent involvement that Ligtenberg has had with Plaintiff's supervision. (*Id.*)

## DISCUSSION

As noted previously, the claim in this case is brought pursuant to 42 U.S.C. § 1983. Injunctions under § 1983 are governed by traditional equitable principles applicable to obtaining injunctions in other circumstances. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). In *Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court held that injunctive relief is available only where the plaintiff who had suffered a prior injury has shown that there is a "real or immediate threat that the plaintiff will be wronged again" in a similar way. *Id.* at 111. A speculative or hypothetical claim of future injury is insufficient. *Shipman v. Missouri Dep't of Family Serv.*, 877 F.2d 678, 681 (8th

12

Cir. 1989). The Supreme Court has cautioned the federal courts against intruding into the arena of criminal law enforcement by states, absent a threat of immediate and irreparable harm: "[T]he need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *Lyons*, 461 U.S. at 112 (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974)).

The constitutional right as issue in this case is the right of access to the courts. Plaintiff contends that Ligtenberg has retaliated against him for asserting his right of access to the courts. Plaintiff fears future retaliation from Ligtenberg because Ligtenberg is the Executive Director of the Parole Board and is indirectly involved in Plaintiff's supervision. To prevail on a claim of retaliation in violation of his constitutional rights, a plaintiff must prove that: (1) he engaged in a constitutionally protected activity; (2) the state actor took some retaliatory action against him; and (3) the protected activity caused the state actor's retaliation. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). At the outset, Ligtenberg contests the existence of a constitutional right in this case. He contends that Plaintiff was not and is not engaged in constitutionally protected activity because Plaintiff has no liberty interest in parole release or in specific conditions of supervision, and actions taken in preparation and execution of his supervision agreement are not protected by the Constitution. Ligtenberg further argues that Plaintiff's pursuit of lawsuits in general is not a federally protected right. Rather, an inmate's right of access to the courts is strictly limited to the right to bring to court a grievance that the inmate wishes to present. Ligtenberg quotes a case from the Tenth Circuit, stating, "Other than habeas corpus or civil rights actions regarding current confinement, a state has no affirmative constitutional obligation to assist inmates in general civil matter" *Carper v. DeLand*, 54 F.3d 613, 616-17 (10th Cir. 1995), but he neglected to quote the very next sentence in *Carper* provides, "Although a state has no affirmative duty to assist an inmate in other civil matters, the state 'may not erect barriers that impede the right of access of incarcerated persons.'" *Id.* at 617, quoting *John L. v. Adams*, 969 F.2d 228, 235 (6th Cir. 1992). Contrary to Ligtenberg's contention, Plaintiff is not arguing that he has a liberty interest in parole or that the State had an obligation to assist him with his lawsuits. Rather, Plaintiff contends that Ligtenberg

13

erected barriers to impede his right of access to the courts by imposing conditions on his parole that would interfere with his litigation, and then by providing false or inaccurate information to the Parole Board in order to get Plaintiff's parole rescinded in retaliation for Plaintiff's assertion of his right to pursue that litigation. Accordingly, Plaintiff has shown that he engaged in a constitutionally protected activity.

The Court notes that the record in this case does not contain evidence that Ligtenberg lied to the Parole Board in retaliation for Plaintiff's exercise of his constitutional rights. However, even if there was such evidence, more than that is required to support injunctive relief. *See, e.g., Sterling v. Calvin*, 874 F.2d 571 (8th Cir. 1989). Plaintiff must show that past conduct alleged to be illegal will recur. *Id.* The pertinent inquiry for purposes of this pending motion for summary judgment is whether Plaintiff has come forward with evidence of an ongoing violation of his constitutional rights which would entitle him to prospective relief. *See Lyons*, 461 U.S. at 111. The fact that Ligtenberg will continue to be tangentially involved in Plaintiff's supervision is not enough to demonstrate that future harm to Plaintiff is likely. Plaintiff has been on indirect supervision since September 10, 2004 and he alleges only one incident that he believes was retaliatory. According to Plaintiff, Ligtenberg retaliated against him by refusing permission for Plaintiff to travel to Minnesota in July, 2005 in order to meet with a potential witness. There is no evidence suggesting that the decision not to allow Plaintiff to travel to Minnesota was based on retaliatory reasons, and there is no showing that Plaintiff's right of access to the courts was impeded by the decision.[1] Plaintiff provides no reason why the Minnesota witness could not have been interviewed by telephone or by Plaintiff's lawyers who had filed notices of appearance in this case on June 6, 2005. Simply put, there is no evidence that Ligtenberg did anything inappropriate in the handling of Plaintiff's request to travel to Minnesota. Although Plaintiff fears retaliation by Ligtenberg in the future, he has not demonstrated that future harm is likely. Plaintiff's belief that he may be subjected to retaliation in the future is not sufficient to avoid summary judgment on his claim for injunctive relief.

---

[1] To succeed on an access to the courts claim, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded" and that he has suffered an actual injury. *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (internal citations omitted).

14

In conclusion, the Court finds that Plaintiff has failed to set forth sufficient evidence from which a fact-finder could infer that Ligtenberg will retaliate against him in the future. Therefore, Ligtenberg is entitled to summary judgment on Plaintiff's § 1983 claim for injunctive relief. Accordingly,

IT IS ORDERED that the Motion for Summary Judgment, doc. 51, is granted.

Dated this 13th day of September, 2006.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY_____
          DEPUTY

15